UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

HABISATA FOFANAH,

    Plaintiff,

v.

BOARD OF EDUCATION OF
MONTGOMERY COUNTY,

    Defendant.

Civil Action No. 25-3090-TDC

**MEMORANDUM OPINION**

Plaintiff Habisata Fofanah, on behalf of her son B.D., has filed this civil action against Defendant the Board of Education of Montgomery County ("the Board"), which operates the Montgomery County Public Schools ("MCPS"), in which she alleges violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–1419, arising out of MCPS's reassignment of B.D. to a different elementary school for the 2025–26 school year. Fofanah has filed a Motion for a Temporary Restraining Order, which the parties have agreed should be construed as a Motion for a Preliminary Injunction. The Board opposes the Motion and has also filed a Motion to Dismiss. Upon review of the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion to Dismiss will be GRANTED in PART and DENIED IN PART, and the Motion for Preliminary Injunction will be DENIED.

**BACKGROUND**

B.D. is a child with autism who resides in Montgomery County, Maryland and is eligible to receive special education services from MCPS under the IDEA. During the 2024–25 school

year, while B.D.'s family lived in a shelter, B.D. was enrolled at Bradley Hills Elementary School ("Bradley Hills") in Bethesda, Maryland and received special education services pursuant to his Individualized Education Plan ("IEP"). In October 2024, B.D.'s family moved to Germantown, Maryland. After the 2024–25 school year, MCPS assigned B.D. to Fox Chapel Elementary School ("Fox Chapel") in Germantown, Maryland based on the family's home address.

On July 29, 2025, pursuant to 20 U.S.C. § 1415(f), Fofanah filed an IDEA due process complaint with the Maryland Office of Administrative Hearings ("OAH") that included allegations that MCPS failed to provide reasonable accommodations required for B.D. to have access to an education, including accommodations relating to his medical and feeding needs, transportation needs, and need to be near medical care; failed to evaluate B.D. and consider his behaviors and symptoms in a timely and adequate manner; failed to provide an appropriate IEP placement; and failed to maintain his placement at Bradley Hills, which she deemed necessary to provide him with a free appropriate public education ("FAPE") in the least restrictive environment. As part of that complaint, Fofanah requested that B.D. be allowed to remain at Bradley Hills during the pendency of the due process proceedings pursuant to the "stay-put" provision of the IDEA, under which "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j) (the "stay-put" provision). On August 19, 2025, Fofanah filed an "Emergency Motion for Stay-Put/Injunctive Relief" with the OAH, again requesting that B.D. be allowed to attend Bradley Hills pursuant to the stay-put provision.

On August 25, 2025, Administrative Law Judge Patrick E. Maher ("the ALJ") granted Fofanah's motion by ruling that B.D. "is entitled to the stay-put protections" and that B.D.'s "stay-put placement is the last agreed-upon educational placement in [his] most recently implemented

IEP." ALJ Stay-Put Ruling at 7, Compl. Ex. 1, ECF No. 1-1. The next day, Fofanah filed with the ALJ a "Motion to Correct Clerical Error and Clarify Stay-Put Placement" ("Motion to Clarify") requesting a revision of the ALJ's ruling to specify that the stay-put order required that B.D. be placed at Bradley Hills. Mot. Clarify at 1, Opp'n Ex. 8, ECF No. 12-8.

On September 17, 2025, while awaiting the ALJ's ruling, Fofanah filed with this Court the present Complaint, which alleges a violation of the stay-put provision of the IDEA, a denial of a FAPE in violation of the IDEA, and discrimination and retaliation under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, all arising in whole or in part from, and seeking relief related to, the alleged failure to enforce the stay-put provision by transferring B.D. from Bradley Hills to Fox Chapel. The Complaint was accompanied by a Motion for a Temporary Restraining Order ("TRO") seeking immediate enforcement of the stay-put requirement by ordering B.D.'s placement at Bradley Hills.

On September 24, 2025, the ALJ denied Fofanah's Motion to Clarify and declined to order MCPS to enroll B.D. at Bradley Hills during the pendency of the due process proceedings. In that ruling, the ALJ found that a student's "'educational placement' is not the location to which the student is assigned, but rather the environment in which the educational services are provided" and ruled that because Fofanah "has not identified any fundamental change in, or elimination of a basic element of the educational program or support services from Bradley Hills to Fox Chapel . . . there has been no change in 'educational placement.'" ALJ Ruling Mot. Clarify at 12, Opp'n Ex. 10, ECF No. 12-10.

## DISCUSSION

In the Motion for a TRO, which the parties have agreed should be construed as a Motion for a Preliminary Injunction, Fofanah seeks an Order requiring MCPS to return B.D. to Bradley

Hills pursuant to the stay-put requirement. MCPS asserts, and Fofanah does not contest, that Fox Chapel is able to implement all special education services identified in B.D.'s most recent IEP and previously provided at Bradley Hills. However, Fofanah contends that the stay-put provision requires that a student remain at the same school location during the pendency of due process proceedings. She further argues that B.D.'s "IEP cannot be implemented safely without proximity to his [gastrointestinal ("GI")] specialist, feeding therapy, and medical providers," and that "[l]ong commutes create serious medical risks" for B.D. Mot. TRO at 1, ECF No. 3. Because of these issues, B.D. has not attended school at Fox Chapel since the beginning of the school year.

In its Motion to Dismiss, the Board argues that Fofanah's claim is an improper interlocutory appeal that may not be considered until she receives a ruling from the ALJ on her due process complaint. The Board further argues that Fofanah's Motion should be denied because the stay-put requirement entitles B.D. only to maintain the same educational placement, not the same school location, during the pendency of due process proceedings.

## I.     Motion to Dismiss

Because it presents a threshold issue, the Court first addresses the Board's Motion to Dismiss, in which it argues that the Court may not consider Fofanah's claims because she has not yet received a ruling from the ALJ on her due process complaint. Although the Board frames this issue as one relating to subject matter jurisdiction, the requirement to exhaust administrative remedies relating to an IDEA claim is not jurisdictional but is instead a claim-processing rule. *K.I. v. Durham Pub. Schs. Bd. of Educ.*, 54 F.4th 779, 792 (4th Cir. 2022). The Board's Motion is therefore properly construed as a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

In general, a plaintiff seeking relief under the IDEA must first exhaust administrative remedies before bringing such an action. *K.I.*, 54 F.4th at 788. A plaintiff seeking to file a civil action for access to a FAPE under the Rehabilitation Act or the ADA also must exhaust the IDEA's administrative procedures "to the same extent as would be required had the action been brought under" the IDEA. 20 U.S.C. § 1415(*l*); *see Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 165 (2017). Courts generally recognize three exceptions to the exhaustion requirement: "(1) when the administrative process would have been futile; (2) when a school board failed to give parents proper notification of their administrative rights; or (3) when administrative exhaustion would have worked severe harm upon a disabled child." *MM ex rel. DM*, 303 F.3d 523, 536 (4th Cir. 2002).

The United States Court of Appeals for the Fourth Circuit, however, has permitted a district court to consider a motion for a preliminary injunction seeking implementation of the stay-put

requirement pursuant to 20 U.S.C. 1415(j) while due process proceedings were still ongoing before the ALJ. *See Wagner v. Bd. of Educ. of Montgomery Cnty.*, 335 F.3d 297, 299, 301 (4th Cir. 2003); *see also Wagner v. Bd. of Educ. of Montgomery Cnty.*, 198 F. Supp. 2d 671, 674 (D. Md. 2002) (summarizing the procedural posture). Other circuits have explicitly held that the IDEA's exhaustion requirement does not apply to motions for a stay-put injunction, because a belated decision upholding stay-put rights "provides no remedy for the disruption already suffered by the student," so "as a practical matter, access to immediate interim relief is essential for the vindication of this particular IDEA right." *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199–200 (2d Cir. 2002); *see N.D. v. Hawaii Dep't. of Educ.*, 600 F.3d 1104, 1110–11 (9th Cir. 2010). The Court finds this reasoning persuasive, because in light of the time-sensitive nature of stay-put relief, it would be futile to first complete the remainder of the due process proceedings, and full exhaustion could result in harm to the student that cannot be undone. *See MM*, 303 F.3d at 536. The Court therefore finds that it may consider Fofanah's Motion for a Preliminary Injunction seeking enforcement of the stay-put requirement and will thus deny the Board's Motion to Dismiss as to that claim. *See Wagner*, 335 F.3d at 301; *Murphy*, 297 F.3d at 199–200; *N.D.*, 600 F.3d at 1100-11.

However, any other claims asserted in the Complaint are subject to the exhaustion requirement and may not be considered until the completion of the due process proceedings. *See K.I.*, 54 F.4th at 788. Although the Complaint references other claims, such as a denial of a FAPE under the IDEA and discrimination and retaliation under the Rehabilitation Act and ADA, the only relief sought by Fofanah for these claims is the return of B.D. to Bradley Hills and compensatory educational services for days of school missed. To the extent that these claims seek anything other than a stay-put injunction, they seek relief for denial of a FAPE and thus are subject to the IDEA's

administrative exhaustion requirement. *See id.*; *Fry*, 580 U.S. at 170–71 (noting that if "only a child in the school setting" could bring an asserted Rehabilitation Act or ADA claim, the "gravamen" of the claim likely relates to a FAPE and is thus subject to the IDEA's administrative exhaustion requirement). The Motion to Dismiss will therefore be granted as to all claims other than the request for a stay-put injunction.

## II.  Stay-Put

In her Motion, Fofanah seeks a preliminary injunction, pursuant to the stay-put provision, requiring MCPS to designate B.D. to Bradley Hills during the pendency of the due process proceedings.

The stay-put provision of the IDEA "guarantees an injunction that prohibits a school board from removing the child from his or her current placement during the pendency of the [due process] proceedings." *Wagner*, 335 F.3d at 301; *see* 20 U.S.C. § 1415(j). Such an injunction "is automatic," in that a party seeking a stay-put order "need not meet the usual requirements for obtaining preliminary injunctive relief." *Wagner*, 335 F.3d at 301. Thus, when presented with an application for stay-put relief under § 1415(j), a district court is to "determine the child's then-current educational placement and enter an order maintaining the child in that placement." *Id.*

The Fourth Circuit has held that "the term 'educational placement' as used in the stay-put provision refers to the overall educational environment rather than the precise location in which the disabled student is educated." *AW ex rel. Wilson v. Fairfax Cnty. Sch. Bd.*, 372 F.3d 674, 676 (4th Cir. 2004). "To the extent that a new setting replicates the educational program contemplated by the student's original assignment and is consistent with . . . affording access to a FAPE," that change in setting does not violate the stay-put provision. *Id.* at 682. In *AW*, the student asserted that his school district violated the stay-put provision by transferring him from one elementary

7

school to an identical program at another elementary school during pending IDEA due process proceedings. *Id.* at 677. The court held that the stay-put requirement was satisfied because the new program was "materially identical in its educational offerings," and nothing in the record "suggest[ed] that the new location . . . would work such a change in the student's routine that the new location cannot fairly be described as an identical setting." *Id.* at 683.

Here, the Board argues that the stay-put requirement has been satisfied because during the pendency of the due process proceedings, MCPS will provide B.D. with an identical educational placement to that previously provided at Bradley Hills. The Board asserts, and Fofanah provides no basis to dispute, that Fox Chapel and Bradley Hills offer the same specialized instruction, related services, and other supports identified in B.D.'s IEP. In clarifying the stay-put order, the ALJ agreed with this position and held that "there has been no change in 'educational placement'" because Fofanah "has not identified any fundamental change in, or elimination of a basic element of the educational program or support services from Bradley Hills to Fox Chapel." ALJ Ruling Mot. Clarify at 12. Because there is no basis to conclude that Fox Chapel's educational services are materially different from those provided to B.D. at Bradley Hills, the stay-put requirement is generally satisfied by a placement at Fox Chapel. *See AW*, 372 F.3d at 683.

In her Motion, Fofanah makes reference to additional circumstances arguably relevant to this issue by asserting that B.D.'s original school location "is essential" because his "IEP cannot be implemented safely without proximity to his GI specialist, feeding therapy, and medical providers," and that "[l]ong commutes create serious medical risks" for B.D, including "motion sickness, reflux, and [gastrostomy tube ("G-tube")] complications." Mot. TRO at 1.

In *AW*, the Fourth Circuit noted that where "a transfer to a different school might entail a commute so long or arduous as to negatively impact the student's ability to excel in the otherwise

identical setting," that transfer might constitute a change in educational placement. *AW*, 372 F.3d at 682, n.9 (finding that a two-mile increase in commute length did not present this issue). The United States Court of Appeals for the Third Circuit has similarly acknowledged that under certain circumstances, "transportation may have a significant effect on a child's learning experience," but that "[m]inor changes in the daily transportation routine, however, will not generally have such an impact." *DeLeon v. Susquehanna Cmty. Sch. Dist.*, 747 F.2d 149, 154 (3d Cir. 1984) (finding that a ten-minute increase in commute time did not amount to a change in educational placement).

To the extent that issues relating to the commute to or from school could, under certain circumstances, provide a basis to conclude that a change in the geographic location of an educational placement results in a material change that would violate the stay-put requirement, Fofanah did not present sufficient information to the ALJ to support such a claim. In her three separate filings to the ALJ seeking a stay-put order, Fofanah's only reference to such an issue was the general statement, in her stay-put request contained in the due process complaint, that a stay-put order was needed to "ensure continuity of services, especially in light of surgery and current medical fragility." Due Process Compl. at 7, Opp'n Ex. 5, ECF No. 12-5. In the broader due process complaint, Fofanah made general references to B.D.'s medical issues and asserted that there is no alternative placement to Bradley Hills that "accounts for his physical limitations or proximity to essential medical care" but did not link this claim to her stay-put request and provided no additional information to demonstrate why that geographic location is necessary to meet B.D.'s educational needs. *Id.* at 11. In her additional motions to the ALJ seeking a stay-put order, Fofanah made no reference to any issues relating to B.D.'s specific medical needs or reasons why they caused a placement at Bradley Hills to be necessary, whether because of its geographic location or otherwise. With the Complaint in this case, Fofanah attached letters from medical providers

referencing "feeding concerns" relating to B.D., his need for nursing care to monitor a "G-tube with continuous feeds," and his need for after-school therapy sessions, but these letters did not explain how these issues necessitated a placement at Bradley Hills. Med. Letters at 2, 4, Compl. Ex. 3, ECF No. 1-3.

Based on this record, Fofanah has not demonstrated that the geographic location of Fox Chapel would cause such a negative impact on B.D. that the educational placement at that location would be materially different from the same educational program at Bradley Hills so as to render placement at Fox Chapel a violation of the stay-put requirement. Fofanah does not argue that B.D.'s ability to concentrate or learn at Fox Chapel would be adversely affected. Although she appears to argue that B.D. faces potential health risks from lengthy after-school drives to medical providers located closer to Bradley Hills, she does not explain why the same medical risks would not arise during a morning commute to Bradley Hills, and the letters attached to the Complaint, even assuming that they were previously presented to the ALJ, provided no medical opinions attesting to any detrimental impacts on B.D.'s ability to learn at Fox Chapel arising from these medical risks. The Court therefore finds that the ALJ properly denied Fofanah's request for an order that the stay-put provision requires placement of B.D. at Bradley Hills.

### III.     Additional Evidence

Instead of filing a reply brief conforming to the Court's requirements, Fofanah responded to the Board's brief by submitting eight different documents through which she expands her argument by asserting that the stay-put provision requires placement at Bradley Hills because attending school at Fox Chapel would force B.D. to endure "long, risky commutes" to after-school appointments with his medical providers located closer to Bradley Hills, and the prolonged after-school transit time to attend these necessary appointments "reduces attendance, triggers medical

symptoms, and interrupts instruction, thereby changing how and whether he can benefit from his IEP." Rebuttal: Medical Evidence at 1, Reply Ex. 4, ECF No. 14-5. In support of this more detailed argument, Fofanah requests that the Court consider additional evidence, including new letters from B.D.'s treating physicians and new evidence relating to housing instability. Fofanah acknowledges, however, that this additional evidence was not previously presented to the ALJ. She nevertheless asks the Court to consider the new evidence and reach a different conclusion from the ALJ.

Generally, in a case challenging an ALJ's decisions arising from an IDEA due process proceeding, a district court acts as a reviewing court that owes a certain amount of deference to the ALJ's determinations. *See MM*, 303 F.3d at 530–31 (noting that in an IDEA case, a reviewing court conducts a "modified de novo review" of an ALJ's determinations and must give "'due weight' to the underlying administrative proceedings"). Although a district court may consider additional evidence not previously presented to the ALJ, *see* 20 U.S.C. § 1415(i)(2)(C), the Fourth Circuit has adopted a "strict approach" to the consideration of additional evidence because a "lax interpretation of 'additional evidence' would reduce the proceedings before the state agency to a mere dress rehearsal" and allow parties to transform the IDEA's judicial review mechanism "into an unrestricted trial *de novo*." *Springer v. Fairfax Cnty. Sch. Bd.*, 134 F.3d 659, 666–67 (4th Cir. 1998) (upholding a district court's refusal to consider additional evidence not presented to the ALJ); *see also A.B. by L.K. v. Smith*, No. 22-1686, 2023 WL 3533595, at *4 (4th Cir. May 18, 2023) (affirming the district court's decision not to consider new evidence not previously presented to the ALJ).

Based on these principles, and where Fofanah's stay-put motions before the ALJ focused primarily on the legal argument that the stay-put provision requires placement at the same school

previously attended, the Court concludes that Fofanah's argument relating to the impact of commuting, and the new evidence offered in support of it, should first be presented to and ruled upon by the ALJ. The Court will therefore decline to consider this new evidence, including the new letters from medical providers, which Fofanah has acknowledged were never presented to the ALJ. Accordingly, the Court will deny the Motion for a Preliminary Injunction based on the record presented to the ALJ, dismiss this case because that ruling resolves the only part of the Complaint not subject to dismissal based on the failure to exhaust administrative remedies, and remand this case so that Fofanah may present the new evidence to the ALJ, along with her more detailed argument that placement of B.D. at Fox Chapel imposes such an arduous after-school commute that it constitutes a change in educational placement barred by the stay-put provision. In addition to presenting this evidence and argument to the ALJ, Fofanah may also, as suggested by the Board, submit a request for a Change of School Assignment based on B.D.'s unique circumstances, to which MCPS should give careful consideration.

## CONCLUSION

For the foregoing reasons, the Board's Motion to Dismiss will be GRANTED IN PART and DENIED IN PART, and Fofanah's Motion for a Preliminary Injunction will be DENIED. The Complaint will be DISMISSED WITHOUT PREJUDICE, and the Court will remand this case to the ALJ for further proceedings as referenced above. A separate Order shall issue.

Date: October 20, 2025

THEODORE D. CHUANG
United States District Judge